IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GENARO ABURTO, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-1473-K |
| | § | |
| MIDLAND CREDIT MANAGEMENT, | § | |
| INC., RLI INSURANCE COMPANY, | § | |
| HOSTO AND BUCHAN, P.L.L.C., | § | |
| WESTERN SURETY COMPANY, | § | |
| MELVIN THATHIAH, MANN | § | |
| BRACKEN, LLC (successor by merger to | § | |
| Wolpoff & Abramson, LLP), | § | |
| TRAVELERS CASUALTY AND | § | |
| SURETY COMPANY OF AMERICA, | § | |
| JAY A. TAYLOR, P.C., UNIVERSAL | § | |
| SURETY OF AMERICA, JAY A. | § | |
| TAYLOR, and HENRY MCDONALD & | § | |
| JAMES, P.C., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Remand to State Court (doc. 18).  For the following reasons, the Court **DENIES** the motion.

## I.      Factual and Procedural Background

This case was originally filed in state court on January 24, 2008 with a single named plaintiff, Ann Mason.  On March 25, 2008, the First Amended Plaintiffs' Original Petition and Request for Disclosure was filed, adding seventy-seven (77)

Plaintiffs.  On May 23, 2008, the Second Amended Plaintiffs' Original Petition and Request for Disclosure ("Second Petition") was filed, naming one hundred twenty-two (122) Plaintiffs and five (5) Defendants, including Midland Credit Management, Inc. ("Midland").  In the Second Petition, Plaintiffs asserted claims for violations of Chapter 392 of the Texas Finance Code, the California Rosenthal Act, and Chapter 12 of the Texas Civil Practice and Remedies Code.  The Second Petition also indicated Plaintiffs would pursue exemplary, actual and statutory damages, as well as attorneys' fees and costs.  In response to special exceptions filed by Defendant Midland, Plaintiffs filed the Third Amended Plaintiffs' Original Petition and Request for Disclosure ("Third Petition") on August 5, 2008.  The Third Petition named one hundred fifty-four (154) Plaintiffs and eleven (11) Defendants.  The Third Petition, while alleging the same causes of action as in the Second Petition, added a claim for negligence and included a paragraph entitled "Maximum Amount Sought by Each Individual Plaintiff".  On August 21, 2008, Midland removed the case to this Court.  Plaintiffs filed this motion to remand on September 12, 2008.

## II.    Applicable Law

The burden of proving federal jurisdiction lies with the removing party, and the federal court must assume a removed case is outside the court's limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  When a motion to remand is filed, the removing party has the burden of establishing federal jurisdiction

and showing the removal was appropriate. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

## A.     Class Action Fairness Act

The Class Action Fairness Act ("CAFA"), enacted by Congress in 2005, significantly enlarged federal jurisdiction related to interstate class action lawsuits. *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 711 n.47 (5th Cir. 2008). CAFA extends original jurisdiction to federal courts for interstate class action lawsuits where: (1) the proposed class contains more than 100 members; (2) minimal diversity exists between the parties (i.e., at least one plaintiff and one defendant are from different states); (3) the amount in controversy exceeds $5,000,000; and (4) the main defendants are not states, state officials, or other governmental entities. 28 U.S.C. § 1332(d)(2),(5). A mass action may also be removed as a class action under paragraphs (2) through (10) of § 1332(d). 28 U.S.C. § 1332(d)(11)(A). A mass action is defined as the claims of 100 or more people proposed to be tried jointly because they involve common questions of law or fact, the amount in controversy as a whole exceeds $5 million, and minimal diversity of citizenship exists. 28 U.S.C. § 1332 (d)(11)(B)(I). Federal courts may exercise jurisdiction only over those plaintiffs whose claims in a mass action exceed the jurisdictional threshold requirement of $75,000. *Id.* As for the removal of these lawsuits originally filed in state court, CAFA obviates the requirement for unanimous consent of all defendants as well as the one year removal deadline. *See* 28 U.S.C. § 1453(b).

CAFA did not eliminate the removing party's burden of establishing federal jurisdiction. *Joseph v. Unitrin, Inc.*, No. 08-077, 2008 WL 3822938, at * 4 (E.D. Tex. Aug. 12, 2008) (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 n. 3 (11th Cir. 2006)).  However, once federal jurisdiction under CAFA is established, the burden shifts to the objecting party to prove by a preponderance of the evidence any jurisdictional exceptions. *Joseph*, 2008 WL 382293, at * 4 (citing *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007)).

1.      **CAFA Exceptions**

CAFA provides two exceptions in which a federal court must decline jurisdiction: (1) the local controversy exception and (2) the home state exception.

a.      Local Exception

The district court must decline jurisdiction under the local controversy exception if the party seeking remand proves by a preponderance of the evidence:

1.      more than two-thirds of the members of all proposed plaintiff classes are citizens of the state where the lawsuit was filed;

2.      plaintiffs sued at least one defendant
   a.      from whom plaintiffs seek significant relief;
   b.      whose conduct forms a significant basis of the plaintiffs' claims; and
   c.      who is a citizen of the state where the lawsuit was filed;

3.      the principal injuries resulting from the alleged conduct, or any related conduct, of each defendant happened in the state where the lawsuit was filed; and

4.      within the past three years, no other class action has been filed against any of the defendants asserting the same or similar factual allegations.

28 U.S.C. § 1332(d)(4)(A) (emphasis added).

    b.  Home State Exception

  The district court must likewise decline jurisdiction where the home state exception has been proven by a preponderance of the evidence: two-thirds or more of the plaintiffs and the primary defendants are citizens of the state where the lawsuit was filed.  28 U.S.C. § 1332(d)(4)(B).

## III. Removal

  Midland removed the case to this Court on August 21, 2008, on the grounds that CAFA applies.  Plaintiffs move the Court to remand this case, arguing it does not meet CAFA's definition of a "class action" or "mass action".  Alternatively, Plaintiffs contend that even if CAFA were applicable, the Court must decline jurisdiction because the local controversy exception applies.  Plaintiffs also argue the Court does not have jurisdiction for several reasons other than the CAFA exception, and that the Court should abstain from exercising jurisdiction.

### 1. Does this Action Qualify as a Mass Action under CAFA?

   a.  Claims Tried Jointly

  Midland argues this is a mass action as defined by CAFA, in that it involves the claims of 100 or more people proposed to be tried jointly because they involve common questions of law or fact, the amount in controversy as a whole exceeds $5 million, and minimal diversity of citizenship exists.  28 U.S.C. § 1332 (d)(11)(B)(I).  (Midland does not contend this is a class action.)  Plaintiffs contend this is not a mass action because

there are not at least one hundred (100) plaintiffs who propose to jointly try their claims on the basis that there are common questions of law and fact.  Rather, Plaintiffs argue a joint trial of all Plaintiffs' claims would be in appropriate because the facts and damages amongst them differ.

In their briefing, Plaintiffs argue Defendants knew at the time of removal that Plaintiffs pled for a custom discovery plan in state court; consequently, Defendants did not and could not know Plaintiffs' trial proposal.  Plaintiffs maintain they discussed with defense counsel the number of claims to be tried together; while the specific number of trials was never agreed upon, Plaintiffs represent to the Court that neither side discussed trying more than twenty (20) claims in a single trial.  Despite Plaintiffs' arguments, however, the record does not evidence Plaintiffs' intentions, prior to removal, for multiple trials to occur.  In fact, Plaintiffs demand in their Third Petition "a jury trial."

This Court must determine what constitutes a proposal for a joint trial.  Although the Fifth Circuit has not yet addressed this issue, the Seventh Circuit has recently addressed this exact issue in *Bullard v. Burlington Northern Santa Fe Railway Co.*, 535 F.3d 759 (7th Cir. 2008).  In that case, 144 plaintiffs filed a single complaint against four defendant-corporations for damages the plaintiffs claimed were caused by a chemical leak from a nearby wood-processing plant.  *Id.* at 761.  The Seventh Circuit faced the same question of whether the case at issue met the definition of mass action set forth in 28 U.S.C. § 1132(d)(11).  The plaintiffs argued that a complaint itself does not propose a trial because the plaintiffs would "be happy to win by summary judgment or settlement."

*Id.* Therefore, whether a suit was a mass action could only be determined on the eve of trial once a pretrial order or like court document identified the parties to the trial. *Id.*

The Seventh Circuit rejected the plaintiffs' argument, concluding such an interpretation would, in effect, eliminate § 1132(d)(11). *Id.* at 762. The Seventh Circuit held that the question was not whether a single trial encompassing the claims of more than 100 plaintiffs actually occurred; rather, it is whether a single trial covering the claims of 100 or more plaintiffs has been proposed to be tried jointly. *Id.* The Seventh Circuit affirmed the district court, concluding the single complaint filed on behalf of all 144 plaintiffs, identifying circumstances common to each plaintiff, did propose one proceeding and, therefore, one trial. *Id.* The Circuit noted that the plaintiffs filed a stipulation after removal indicating a trial covering fewer than all of their claims would be acceptable. *Id.* The Circuit concluded this was merely "a unilateral description of one side's position," and filing it after the notice of removal would likely not affect federal jurisdiction. *Id.* (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938)).

Just as in *Bullard*, the Plaintiffs in this case filed a single complaint setting forth all of their claims, which described circumstances common to them all. The Court agrees with the Seventh Circuit's conclusion that whether a single trial encompassing the claims of 100 or more plaintiffs actually occurs is not the determining factor; instead, the question is whether one trial has been proposed. *Id.* The Court concludes that based on the record at the time of removal, one trial covering the claims of all 154 Plaintiffs

had been proposed.  Although Plaintiffs make reference to discussions with defense counsel regarding multiple trials, there is nothing in the record evidencing such an agreement.  Furthermore, any proposal of multiple trials from Plaintiffs' counsel in their affidavits  is, as in *Bullard*, nothing more than a unilateral statement of their position. *Id.*  Moreover, because both the briefing references and affidavit statements are post-removal, they do not take this case outside the scope of CAFA.  *See id.*

This Court concludes the record reflects, at the time of removal, that the claims of the 154 Plaintiffs were proposed to be tried jointly.

b.      "Event or Occurrence"

Plaintiffs next argue this action cannot be a mass action because all the claims resulted from events or occurrences in Texas and the resulting injuries were sustained in Texas.  CAFA specifically excludes from the definition of mass actions any action in which "all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State."  28 U.S.C. § 1332(d)(11)(B)(ii)(I).  Plaintiffs assert that this lawsuit meets this definition because they seek damages arising from actions filed against them in Texas, and more than half of the Plaintiffs are seeking damages stemming from void judgments taken against them and any resulting collection activity to collect on those judgments in Texas.

The Court agrees with Midland that this case does not fall within the exception to a mass action.  The language of the statute references "an event or occurrence," both

terms being singular.  Plaintiffs' Third Petition, as well as their briefing, clearly recites factual allegations involving more than a singular event or occurrence.  While the underlying facts of each Plaintiff's situation may be similar, this case involves 154 Plaintiffs who were each sued for debt collection on behalf of Midland by different law firms and different attorneys in separate proceedings in various Texas state courts.  A Florida district court addressed a similar issue in *Galstaldi v. Sunvest Communities USA, LLC,* No. 08-62076, 2009 WL 415258 (S.D. Fla. Feb. 17, 2009).  In the Florida case, 177 plaintiffs filed suit against multiple defendants alleging they conducted a fraudulent scheme involving condominium sales in Florida.  *Id.* at *1.  The court concluded the language of CAFA is clear in that "event or occurrence" is used in the singular.  *Id.* at *4.  If further explanation or clarification was needed, the court noted the legislative history bolstered its conclusion that this exception "'would apply only to a truly local single event[.]'" *Id.* (quoting S. Rep. 109-14, at 47, *as reprinted in* 2005 U.S.C.C.A.N. 3, at 44).  This Court agrees with the Florida district court.  The statutory language is clear–an "event or occurrence" which can take an action outside the definition of a "mass action" is a singular event or occurrence.  *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(I).  Even if the language itself was not clear, the legislative history evidences this was the intended effect.  *See Galstaldi*, 2009 WL 415258, at *4.

Accordingly, this exception does not apply to this case where separate lawsuits were filed in different Texas state courts against the Plaintiffs individually by different lawyers with different law firms on behalf of Midland.  The Court cannot conclude these

actions were "an event or occurrence" within the meaning of section 1332(d)(11)(B)(ii)(I). *See also Cooper v. R.J. Reynolds Tobacco Co.*, 586 F.Supp.2d 1312, 1316 (M.D. Fla. 2008)(this exception intended to keep a case arising from single event or occurrence, like a chemical spill or a building collapse, in state court).

The Court concludes this case meets the definition of a mass action as set forth in CAFA.

**2.      Must the Court Decline Jurisdiction Under the Local Controversy Exception?**

Plaintiffs argue in the alternative that the Court must decline jurisdiction because the local controversy exception applies.  The Court must decline jurisdiction under the local controversy exception if Plaintiffs prove by a preponderance of the evidence:

1.      more than two-thirds of the Plaintiffs are Texas citizens;

2.      they sued at least one defendant
   a.      from whom they seek significant relief;
   b.      whose conduct forms a significant basis of their claims; <u>and</u>
   c.      who is a Texas citizen;

3.      the principal injuries resulting from the alleged conduct, or any related conduct, of each defendant happened in Texas; <u>and</u>

4.      within the past three years, no other class action has been filed against any of the defendants asserting the same or similar factual allegations.

*See* 28 U.S.C. § 1332(d)(4)(A) (emphasis added).  Legislative history indicates that any doubts as to the applicability of the local controversy exception should be "resolved 'in favor of exercising jurisdiction over the case.'" *Escoe v. State Farm Fire and Cas. Co.*, No.

07-1123, 2007 WL 1207231, at *2 (E.D. La. April 23, 2007) (quoting *Evans*, 449 F.3d at 1163).

Plaintiffs argue they prove each element of this exception by a preponderance of the evidence.  In its briefing, Midland argues only that Plaintiffs fail to adequately establish the second element, apparently conceding Plaintiffs sufficiently establish the first, third, and fourth elements.  Therefore, the Court will address the second element of the local exception.

> a.    Significant Relief Sought from at Least One Texas Defendant?

Plaintiffs contend they seek significant relief from Defendant Melvin Thathiah ("Thathiah").  Thathiah, an attorney, sued at least seventy-one (71) Plaintiffs on behalf of Midland while he worked for Defendant Hosto and Buchan, P.L.L.C. ("Hosto").  Plaintiffs allege that Thathiah, as an attorney, knew or should have known not to file the lawsuits because Midland did not own the debts which were the subject of the lawsuits.  Because of this, Plaintiffs contend they seek significant relief from him.

To seek "significant relief" from a particular defendant means the plaintiffs seek relief from that defendant which amounts to a significant part of the total relief sought.  *Joseph*, 2008 WL 3822938, at *7 (citing *Evans*, 449 F.3d at 1167).  The court must take into account several factors when making this determination which "includes not only an assessment of how many [plaintiffs] were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment.'" *Joseph*, 2008 WL 3822938, at *7 (quoting *Robinson v. Cheetah*

*Transp.*, No. 06-0005, 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006)).  If the relief

sought from a certain defendant is "'just small change'" compared to the relief being

sought from the other defendants, that certain defendant cannot be considered

significant.  *Joseph*, 2008 WL 3822938, at * 7 (quoting *Phillips v. Severn Trent Envtl.

Servs., Inc.*, No. 07-3889, 2007 WL 2757131, at *3 (E.D. La. Sept. 19, 2007)).  In

addition, if only a small portion of the class members have claims against that particular

defendant, then that defendant is not a "significant" defendant.  *See Escoe*, 2007 WL

2757131, at *3.

Assuming without deciding that Plaintiffs sufficiently proved Thathiah's Texas

citizenship status, Plaintiffs have not proven by a preponderance of the evidence that

they seek significant relief from Thathiah.  Plaintiffs' allege Thathiah filed suit on behalf

of Midland against seventy-one Plaintiffs, fewer than one-half of all Plaintiffs.  Hosto,

Thathiah's employer, filed suit against seventy-four Plaintiffs on behalf of Midland, and

sixty-four Plaintiffs were sued by Defendant MannBracken, LLC ("MannBracken", as

successor to Wolpoff & Abramson, L.L.P.).  Comparatively, all 154 of the Plaintiffs

assert claims against Midland, an out-of-state Defendant.  In comparing the claims

asserted against the Defendants, each Plaintiff seeks relief from Midland; only a portion

of the Plaintiffs, fewer than one-half, assert claims against Thathiah.  Almost equal in

numbers are the Plaintiffs asserting claims against Thathiah's employer, Hosto, and

another law firm, MannBracken.  The Court cannot conclude that Plaintiffs seek

"significant relief" from Thathiah when the record indicates that fewer than one-half of Plaintiffs have claims against Thathiah.

Moreover, when the Court compares the relief sought from each Defendant and each one's ability to pay, it is ever more apparent that the putative class members do not seek "significant" relief from Thathiah. *See Joseph*, 2008 WL 3822938, at *7.  In their Third Petition, the Plaintiffs as a whole seek relief from Midland, yet only certain subsets seek relief from the other Defendants, including Thathiah.  Plaintiffs seek to collect damages from all Defendants jointly and severally.  As noted by the Court, Plaintiffs named as Defendants two individual attorneys acting for their law firms on behalf of their client, Midland.  Plaintiffs also sued the law firms which employed the individual defendant–attorneys, Midland, and each of their liability carriers.  The relief sought in this case exceeds $5,000,000.  The Court would be hard-pressed to find that Thathiah, one of only two individual Defendants, is anything more than "just small change" in comparison to the relief Plaintiffs will seek from the other nine Defendants which are entities, particularly from Midland against whom each Plaintiff has a claim. *See Robinson*, 2006 WL 468820, at *4.

Plaintiffs did not meet their burden to show the putative class is seeking significant relief from Thathiah; meaning, they did not show by a preponderance of the evidence the relief they seek from Thathiah is a significant part of the total relief sought. The record evidences that fewer than one-half of the Plaintiffs have claims against Thathiah, and no evidence establishes that the relief sought against Thathiah is a

significant part of the total relief sought, which is more than $5 million.  *Compare Escoe*, 2007 WL 1207231, at *3 (only a portion of plaintiffs were affected by in-state defendant–insurance agent, and plaintiffs were all Louisiana citizens who had homeowners insurance policy with out-of-state defendant–insurance company, so local controversy exception did not apply), *with Phillips*, 2007 WL 2757131, at *3 (no evidence that only a subset of plaintiffs were seeking relief from in-state defendant; all had claims against in-state defendant).  Because Plaintiffs failed to establish the significant relief element of the exception by a preponderance of the evidence, the local controversy exception does not apply.

### 3.    Timeliness of Removal Notice

As an alternative argument for remand, Plaintiffs contend Defendant Midland untimely removed this case, and thereby waived its right to removal.  Plaintiffs also contend Midland filed a defective notice of removal in failing to affirmatively allege its citizenship, which requires the Court to remand this case.

To remove a case under CAFA, the defendant must prove minimal diversity and an aggregated amount in controversy of $5,000,000 or more.  28 U.S.C. § 1332(d). Plaintiffs filed their Second Petition in state court on May 23, 2008.  In their motion to remand, Plaintiffs argue their Second Petition put Midland on notice each plaintiff was seeking more than $75,000 in damages.  Because Midland did not remove the case until August 21, 2008, sixteen days after the Third Petition was filed, Plaintiffs contend Midland's removal was untimely.

ORDER – PAGE 14

First, the Court addresses Plaintiffs' mistaken argument that a federal court has jurisdiction under the CAFA provision "only for plaintiffs whose claims exceed the sum or value of $75,000, exclusive of interest and costs." Section 1332(a) does vest a district court with jurisdiction in cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). However, in cases falling within the parameters of the CAFA provision, the aggregated amount in controversy must exceed $5,000,000, exclusive of interest and costs, in addition to the minimum $75,000 requirement of each Plaintiff. 28 U.S.C. § 1332(d)(2). Because Midland removed this case pursuant to the CAFA provision, the inquiry for the Court is whether Midland was put on notice by the Second Petition that each Plaintiff claimed at least $75,000 in damages, and the aggregated amount of Plaintiffs' claims as a whole totaled at least $5,000,000.

Section 1446(b) addresses the time limits for removing a case to district court. The first paragraph speaks to removal based on initial pleadings "setting forth" the claims of the case and the relief requested. 28 U.S.C. § 1446(b). The second paragraph addresses removal based on an amended pleading, among other things, "from which it may first be ascertained that the case is one which is or has become removable." *Id.* The Fifth Circuit analyzed the differences between "setting forth" as to initial pleadings and "ascertain" as to amended pleadings in *Bosky v. Kroger Texas, LP.*, 288 F.3d 208 (5th Cir. 2002). Based on the dictionary definitions, the Fifth Circuit defined "setting forth" as "'publish' or 'to give an account or statement of'" whereas "ascertain" means "'to make

certain, exact, or precise' or 'to find out or learn with certainty.'" *Id.* at 211.  The Fifth Circuit concluded "ascertain" demands a higher degree of certainty or that the factual allegations substantiating the removal be stated unequivocally.  *Id.*  The Fifth Circuit adopted a Tenth Circuit rule in concluding that to remove a case on an amended pleading, motion, order or other paper, the facts alleged must be "unequivocally clear and certain" to trigger the time limit under the second paragraph of section 1446(b). *Id.* (citing *DeBry v. Transamerica Corp.*, 601 F.2d 480, 489 (10th Cir. 1979)).

Upon review of the Second Petition, the Court concludes Plaintiffs did not "make certain" nor could Midland have learned with certainty the damages being sought in the Second Petition.  In the Second Petition, the claims asserted by the 122 plaintiffs were violations of Chapter 392 of the Texas Finance Code, the California Rosenthal Act, and Chapter 12 of the Texas Civil Practice and Remedies Code, unreasonable collection efforts, and actual and exemplary damages and attorneys' fees.  The civil remedies available to parties suing under Chapter 392 of the Texas Finance Code are actual damages, injunctive relief, and attorneys fees.  TEX. FIN. CODE ANN. § 392.403 (Vernon 2009).  Nowhere in the Second Amended Petition do Plaintiffs allege any dollar amount for actual damages.  For violating the Rosenthal Act, each plaintiff could recover no less than $100.00 but no more than $1,000.00.  For violations of Chapter 12 of the Texas Civil Practice and Remedies Code, each or all of the five named Defendants could be liable to one or more of the plaintiffs up to $10,000 or actual damages.  Plaintiffs make no specific damages claims for the unreasonable collection efforts claim, and the

exemplary damages claim does not allege any monetary amount or even a suggested method of calculating these damages.  The Court cannot conclude Midland could "ascertain", as defined by the Fifth Circuit, from the Second Petition that Plaintiffs as a whole were seeking more than $5,000,000.

The Court concludes, therefore, that Midland timely removed this case upon receipt of Plaintiffs' Third Petition from which it was "unequivocally clear and certain" that Plaintiffs were seeking more than $5,000,000, and each Plaintiff meet the $75,000 jurisdictional requirement.

### 4.   Allegation of Corporate Citizenship

Plaintiffs also argue remand is appropriate because Midland filed a defective notice of removal by failing to affirmatively allege its citizenship.  Midland contends its corporate citizenship allegation is sufficient; however, should the Court deem otherwise, Midland requests that it be permitted to amend its notice of removal.  A defective jurisdictional allegation may be amended in the trial or appellate court.  28 U.S.C. §1653.  A corporate defendant's failure to properly allege its corporate citizenship in a notice of removal is considered a defective allegation.  *See D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 147 (5th Cir. 1979) (citing *Fireman's Ins. Co. of Newark, N.J. v. Robbins Coal Co., Inc.*, 288 F.2d 349, 350 (5th Cir. 1961)).  This defective jurisdiction allegation may be cured in an amended notice of removal filed in the district court. *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887-88 (5th Cir. 2000); *Fireman's Ins. Co.*, 288 F.2d at 350.

ORDER – PAGE 17

In its removal notice, Midland asserted it is a "Kansas corporation with its principal place of business in San Diego, California." A corporation is considered a citizen of the state of its incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c). Plaintiffs argue Midland failed to specifically assert the state in which it is incorporated. While the Court agrees Midland's notice contains a defective jurisdictional allegation, it is a technical defect and does not necessitate remand. Accordingly, the Court concludes it is appropriate to allow Midland to amend its notice of removal to properly allege its corporate citizenship and **grants** Midland's request. *See Whitmire*, 212 F.3d at 887 (section 1653 to be interpreted broadly to prevent dismissals on merely technical grounds). Midland must file its amended notice **within ten (10) days** from the date this order was signed, properly alleging its corporate citizenship.

## IV. *Rooker-Feldman* **Doctrine**

As another alternative basis for remand, Plaintiffs argue that even if the case was removable under CAFA, the *Rooker-Feldman* doctrine divests the Court of its jurisdiction. Specifically, Plaintiffs contend that their claims require the Court to review the underlying state court judgments of seventy-nine Plaintiffs which this Court cannot do.

Unless authorized by federal statute, a federal district court does not have subject matter jurisdiction over challenges to final state court judgments. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16 (1923). The Supreme Court revisited the *Rooker-Feldman* doctrine in

*Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280 (2005).  The Supreme Court held that the doctrine applies to cases filed in federal court by state court losers, after the conclusion of the state court proceedings, in which the plaintiff alleges injuries caused by the state court judgment and seeks the district court to review and reject the state court judgment.  *Id.* at 291-92.  The Fifth Circuit has noted that if the district court faces "issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to review the state-court decision,'" and the district court is precluded from reviewing, modifying, or nullifying a final state court judgment.  *U.S. v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)(quoting *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317-18 (5th Cir. 1994)).

For the following reasons, the Court concludes the *Rooker-Feldman* doctrine does not apply here.  The Court first notes that the factual scenario in this case is quite unlike that normally present in a *Rooker-Feldman* analysis.  Most *Rooker-Feldman* cases, if not all, involve the "state court loser" filing suit in federal district court, raising constitutional issues related to the underlying state court judgment, with either the defendant or the court *sua sponte* raising jurisdiction preclusion through the *Rooker-Feldman* doctrine.  In this case, Plaintiffs, who are the state court losers, filed suit <u>in state court</u> with Midland then removing to this Court; and it is <u>Plaintiffs</u>, the state court losers, who contend the *Rooker-Feldman* doctrine precludes this Court from exercising jurisdiction over a majority of the claims at issue here.  This case does not fall within the scenario set forth by the Supreme Court in *Exxon Mobil* describing which cases the *Rooker-Feldman* doctrine applies;

specifically, a case filed in federal court by the state court loser, after the conclusion of the state court proceedings, in which the plaintiff, alleging injuries caused by the state court judgment, seeks the district court's review and rejection of the state court judgment. *Exxon Mobil*, 544 U.S. at 291-92.

Moreover, as the Court reads Plaintiffs' Third Petition, Plaintiffs are not asking this Court to directly review the state court judgments, nor to overturn or otherwise modify them. Plaintiffs allege several causes of action against Defendants related to the collection of debts allegedly owed by Plaintiffs to Midland. One such cause of action is for violations of Chapter 12 of the Texas Civil Practice and Remedies Code. Plaintiffs allege Defendants:

> "made, presented, or used a document or other record with (1) knowledge that the document or other record was a fraudulent court record or fraudulent lien or claim against real or personal property or an interest in real or personal property; (2) intent that the document or record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state . . . evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and (3) intent to cause another person to suffer financial injury and/or mental anguish or emotional distress."

Plaintiffs argue this cause of action requires the Court to review the propriety of the seventy-nine state court judgments at issue to determine Defendants' liability and Plaintiffs' damages, and, under *Rooker-Feldman*, such review would be precluded. In addition, Plaintiffs contend, because the Court could not exercise jurisdiction over the claims of these seventy-nine Plaintiffs, the CAFA requirement of at least 100 plaintiffs

would not be met, therefore, the Court could not exercise jurisdiction over any portion of the case under CAFA and must remand the case entirely.

Although Plaintiffs make this allegation against Defendants, the Court cannot conclude that the language of this claim requires the Court to review the validity and propriety of the state court judgments or that Plaintiffs seek to have the judgements overturned.  The Court would be required to address Defendants' knowledge and intent as to this claim, but not to directly review and nullify the judgments.  *See Exxon Mobil*, 544 U.S. at 291-92 (*Rooker* and *Feldman* cases both involved cases seeking the district court's review <u>and</u> rejection of allegedly injurious state court judgments)(emphasis added).  The Court agrees with Plaintiffs that were this Court being asked to review and then overturn or modify the underlying state court judgments, as if in the posture of an appellate court, the *Rooker-Feldman* doctrine would preclude this Court from exercising jurisdiction.  However, the claims before this Court cannot be characterized in that way.

For the foregoing reasons, the Court concludes the *Rooker-Feldman* doctrine does not apply.

V.     ***Thibodaux* Abstention Doctrine**

Plaintiffs also argue the Court should abstain from exercising jurisdiction in this case based on the *Thibodaux* doctrine.  *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959).  The *Thibodaux* case involved eminent domain issues.  The Supreme Court stated that when a case involves the relationship between city and state or the reach of an uninterpreted state statute that is "of questionable constitutionality," federal

district courts have been required to stay the proceedings pending a state court determination of the state law issues. *Id.* at 27-28. The Supreme Court expounded on *Thibodaux* more recently in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), holding that, in cases seeking damages as relief, district courts may stay these actions based on abstention; but, outright dismissal or remand is not appropriate. *Id.* at 707 (citing *Thibodaux*, 360 U.S. at 28).

Plaintiffs are not clear in their briefing on what action they seek from the Court based on *Thibodaux*–whether they seek the Court stay the proceedings or remand. Regardless, the *Thibodaux* abstention doctrine does not apply here. The record does not support, and Plaintiffs have not established, any reason or justification for the Court to stay these proceedings. The Court can discern nothing from the record establishing a state court must first make a determination of any state law at issue in this case before proceeding in this Court. Furthermore, the Plaintiffs in this case seek damages as their relief. The Supreme Court has specifically held that remand or outright dismissal is not an appropriate action for this Court to take. *Quackenbush*, 517 U.S. at 707. Therefore, the *Thibodaux* doctrine is not applicable.

## VI.   Conclusion

The Court concludes this case is a "mass action" as defined in CAFA, and Plaintiffs have not proven by a preponderance of the evidence that an exception applies requiring the Court to decline jurisdiction. Furthermore, Midland timely removed this action upon ascertaining from the Third Petition that removal was appropriate.

Plaintiffs have not established that either the *Rooker-Feldman* doctrine or the *Thibodaux* abstention doctrine apply to this case and dictate remand to state court.  Accordingly, the Court **denies** Plaintiffs' motion to remand entirely.  The Court **grants** Midland's request to amend its removal notice so that it may properly allege its corporate citizenship.

       **SO ORDERED.**

       Signed July 27th, 2009.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE

ORDER – PAGE 23